UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHIRLEY ANN MILLER, | ) | |
| | ) | Case No. 1:17CV0718 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE JAMES S. GWIN |
| | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | REPORT AND RECOMMENDATION |

Plaintiff Shirley Ann Miller ("Miller" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act").  This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be affirmed.

I.  PROCEDURAL HISTORY

On June 14, 2013, Miller filed an application for SSI benefits, alleging disability beginning April 1, 2013.  (R.9, PageID #: 60, 218-221, 238-239, 249-258.)  Miller's application

was denied initially and upon reconsideration.  (R.9, PageID #: 60, 143-157, 158-174.)
Thereafter, Miller filed a request for a hearing before an administrative law judge.  (R.9, PageID
#: 193.)

The ALJ held a hearing on September 21, 2015.  (R.9, PageID #: 77-114.)  Miller
appeared at the hearing, was represented by counsel, and testified.  (*Id.* at 78, 81-106.)  A
vocational expert ("VE") also attended the hearing and provided testimony.  (*Id.* at 78, 107-110.)

On February 29, 2016, the ALJ issued her decision, applying the standard five-step
sequential analysis to determine whether Miller was disabled.  (R.9, PageID #: 60-71; *see
generally* 20 C.F.R. § 416.920(a).)  Based on her review, the ALJ concluded Miller was not
disabled.  (R.9, PageID #: 60, 71.)

The Appeals Council denied Miller's request for review, thus rendering the ALJ's
decision the final decision of the Commissioner.  (R.9, PageID #: 48-50.)  Miller now seeks
judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  The parties
have completed briefing in this case.

Miller presents the following legal issues for the court's review:

1.  Whether the ALJ violated the treating physician rule.

2.  Whether the ALJ erred when she excluded plaintiff's chronic headaches and
PTSD from consideration as severe conditions under the Sixth Circuit's *de
minimis* standard.

(R. 11, PageID #: 1178.)

## II.  PERSONAL BACKGROUND INFORMATION

Miller was born on February 7, 1965, and was 47 years old, which is defined a younger individual age 18-49, on the application date.  (R.9, PageID #: 218, 238.)  Miller has at least a high school education, and is able to communicate in English.  (R.9, PageID #: 84, 249, 251.)  Miller had past work as a small parts assembler.  (R.9, PageID #: 84-85, 107.)

## III.  RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Miller's brief alleging error by the ALJ.  As noted earlier, Miller applied for SSI on April 1, 2013.  (R.9, PageID #: 60, 218-221.)  Miller listed her physical or mental conditions that limit her ability to work as:  "dental issues (trauma), insomnia, GERD, restless leg syndrome, fibromyalgia, obsessive compulsive disorder, multiple back issues, leg problems, hypertension, high cholesterol, migraines, nerve problems, carpal tunnel problem, neuropathy in arms and legs, multiple mental issues, bone spurs in feet."  (R.9, PageID #: 250.)

On July 18, 2013, Miller presented to John H. Nickels, M.D., a pain management specialist, as a new patient.  (R. 9, PageID #: 903-910.)  Miller complained of neck pain with radiation down both arms, worse on the right; bilateral carpal tunnel syndrome, worse on the left; constant headaches and migraines; and, middle back pain, with pain across the lower back and

---

[1]  The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

down both legs.  *Id.* at 903.  Dr. Nickels identified her problems as lumbar herniation, cervical radiculopathy, lumbosacral radiculopathy, and unspecified myalgia and myositis.  *Id.*

Miller reported to Dr. Nickels that her pains began after a motor vehicle accident, in which she was the back-seat passenger of a car that was rear-ended by a drunk driver.  (R. 9, PageID #: 907.)  All her neck and back pains began after this accident.  *Id.*  She reported to Dr. Nickels that she had been diagnosed with degenerative disc disease, sciatica, arthritis, fibromyalgia, herniated disc disease, and carpal tunnel syndrome.  *Id.*  She has had x-rays and MRIs of her back.  *Id.*  In addition, Miller informed Dr. Nickels that Dr. Stickney had performed a caudal block, which was "no help at all."  (R. 9, PageID #: 907.)  Dr. Richardson referred her for pain management.  *Id.*

Dr. Nickels performed a physical exam on July 18, 2013.  (R. 9, PageID #: 907-908.)  Dr. Nickels assessed her condition as (1) brachial neuritis or radiculitis NOS; (2) thoracic or lumbosacral neuritis or radiculitis, unspecified; (3) displacement of thoracic or lumbar intervertebral disc without myelopathy; lumbar intervertebral disc without myelopathy; and, (4) myalgia and myositis, unspecified.  *Id.* at 909.  Dr. Nickels indicated that he needed to see her MRI reports and exams.  *Id.* The doctor prescribed medications, including a narcotic pain reliever (Norco) and a muscle-relaxer (Tizanidine) for spasms.  *Id.*  Dr. Nickels also started her on a compound cream for skin application to tender areas.  *Id.*

A.  Opinion Evidence

On July 31, 2013, Dr. Nickels completed a Medical Source Statement, addressing Miller's physical capacity.  (R. 9, PageID #: 474-475.)  At that point, the medical records

4

indicate that Miller had visited Dr. Nickels once, two weeks earlier on July 13, 2013.  (R. 9, PageID #: 903-910.)  Based on that examination, Dr. Nickels assessed Miller's ability to lift was limited to ten pounds occasionally, and five pounds frequently.  (R. 9, PageID #: 474.)  Dr. Nickels assessed that Miller was able to stand and walk for only twenty minutes at a time, for a total of one hour of an eight-hour workday, and she was limited to sitting for one hour at a time, for a total of two hours in an eight-hour workday.  *Id.*  In addition, the doctor opined that Miller was rarely able to push, pull, reach, climb, stoop, crouch, kneel and crawl.  *Id.* at 474-475.

Dr. Nickels indicated that Miller experienced severe pain that would interfere with concentration, take her off task, and cause absenteeism.  (R. 9, PageID #: 475.)  Dr. Nickels noted that a cane had been prescribed, and that Miller would need to be able to alternate at will between sitting, standing, and walking.  *Id.*  He opined that Miller would require additional unscheduled daily rest periods of one to two hours beyond the norm.  *Id.*  The doctor wrote that Miller's limitations were caused by severe neck pain with radiation down both arms, bilateral carpal tunnel syndrome, chronic migraine headaches, degenerative disc disease, fibromyalgia, and osteoarthritis.  *Id.* at 474.

Miller had an earlier period of disability, with benefits paid through December 16, 2011.  *See* R. 9, PageID #: 118.  Her disability status was reviewed and denied in April 2013.  *Id.*  In June 2013, she filed the current application.  *Id.* at PageID #: 60, 218-221.  Edmond Gardner, M.D., completed a physical residual functional capacity assessment on November 1, 2013.  (R. 9, PageID #: 152-153.)  Dr. Gardner opined that Miller was capable of performing a full range of medium exertional work.  *Id.*  Michael Lehv, M.D. completed a physical residual functional capacity assessment, dated May 15, 2014.  (R. 9, PageID #: 171.)  Dr. Lehv declined to adopt an

earlier RFC dated April 19, 2013,[2] because of multiple new conditions, specifically, "a recent assault with a head injury, loss of balance.  Also, worsened pains in neck, back, legs. [Left] ankle problems and 'needs surgery.'"  *Id.*

On November 15, 2013, Alison Flowers, Psy.D., conducted an adult psychological evaluation of Miller.  (R. 9, PageID #: 700-710.)  Dr. Flowers diagnosed Miller with Bipolar I Disorder, and Anxiety Disorder.  *Id.* at 706-707.  Dr. Flowers indicated that Miller's prognosis was guarded, in that she was continuing to have symptoms related to bipolar disorder as well as anxiety despite receiving medical management for these symptoms.  *Id.* at 707.

Dr. Flowers discussed Miller's work-related mental abilities.  (R. 9, PageID #: 708-710.) Although Miller reported concentration and memory difficulties, the psychologist noted that she was able to carry out the majority of the instructions for the exam without problems.  *Id.* at 708-709.  Miller also reported having problems with attention and concentration, but Dr. Flowers indicated she performed well on the attention and concentration aspects of the exam.  *Id.* at 709. In both these areas, however, her digit span was limited and she had difficulty remembering objects after a delay.  *Id.* Dr. Flowers assessed that Miller should be able to perform simple tasks, but would have more difficulty with multi-step tasks.  *Id.*

Dr. Flowers indicated that Miller was able to interact appropriately during the appointment, although she was irritable at times.  (R. 9, PageID #: 709.)  The psychologist noted that Miller's symptoms of bipolar disorder and anxiety may limit her ability to respond appropriately to work pressures.  *Id.*

---

[2]  The ALJ's decision that is before this court is dated February 29, 2016.  *Id.* at PageID #: 60-71.

A psychiatric review conducted on December 4, 2013, by Denise Rabold, Ph.D., found moderate restrictions of activities of daily living, and moderate difficulties in maintaining social functioning, concentration, and persistence or pace.  (R. 9, PageID #: 151.)

## IV.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in her February 29, 2016, decision:

1.  The claimant has not engaged in substantial gainful activity since June 14, 2013, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments: lumbar displacement, fibromyositis, carpal tunnel syndrome (CTS)/ osteoarthritis of the hands, and a mood disorder with depression and anxiety (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with limitations.  The claimant can push/pull with her bilateral upper and lower extremities no more than occasionally.  The claimant can handle and finger bilaterally frequently.  The claimant can never climb ropes, ladders, or scaffolds, and can perform all other postural activities no more than occasionally (climb ramps, stairs, balance, stoop, kneel, crouch, crawl).  The claimant must not be exposed to hazards such as unprotected heights or moving mechanical parts.  The claimant is limited to simple tasks and simple decisionmaking.  The claimant can have no more than occasional interaction with supervisors, and must have only infrequent and superficial interaction with co-workers and the public in nonconfrontational and static settings with only infrequent changes in tasks.

5.  The claimant is capable of performing past relevant work as a small products assembler.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6.  The claimant has not been under a disability, as defined in the Social Security
Act, since June 14, 2013, the date the application was filed (20 CFR 416.920(g)).

(R.9, PageID #: 62, 64, 69, 71.)


## V.  DISABILITY STANDARD

A claimant is entitled to receive SSI benefits only when she establishes disability within

the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered

disabled when she cannot perform "substantial gainful employment by reason of any medically

determinable physical or mental impairment that can be expected to result in death or that has

lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20

C.F.R. § 416.905(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential

analysis in making a disability determination.  *See* 20 C.F.R. §  416.920(a); *Heston v.*

*Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has

outlined the five steps as follows:

First, the claimant must demonstrate that he has not engaged in substantial gainful
activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(i). Second, the
claimant must show that he suffers from a severe medically determinable physical
or mental impairment.  *Id.* § 404.1520(a)(4)(ii).  Third, if the claimant shows that
his impairment meets or medically equals one of the impairments listed in 20
C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  *Id.* § 404.1520(a)(4)(iii).
Fourth, the ALJ determines whether, based on the claimant's residual functional
capacity, the claimant can perform his past relevant work, in which case the
claimant is not disabled.  *Id.* § 404.1520(a)(4)(iv).  Fifth, the ALJ determines
whether, based on the claimant's residual functional capacity, as well as his age,
education, and work experience, the claimant can make an adjustment to other
work, in which case the claimant is not disabled.  *Id.* § 404.1520(a)(4)(v).

8

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may

examine all the evidence in the record, regardless of whether such evidence was cited in the

Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241,

245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D.

Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

VII.  ANALYSIS

Miller presents the following legal issues for the court's review:

1.  Whether the ALJ violated the treating physician rule.

2.  Whether the ALJ erred when she excluded plaintiff's chronic headaches and
PTSD from consideration as severe conditions under the Sixth Circuit's *de
minimis* standard.

(R. 11, PageID #: 1178.)

A. Treating Physician

Miller argues that the ALJ's decision erred in assigning the medical opinion of Dr.

Nickels "little weight."  (R. 11, PageID #: 1192, citing R.9, PageID #: 68.)  Miller characterizes

Dr. Nickels as her "long-term treating physician," and points out that a treating physician's

opinion is generally given controlling weight.  *Id.*

The ALJ's decision discussed opinion evidence, in pertinent part, as follows:

Significantly, the weight of the medical opinions of record is also not suggestive
of disability or an inability to perform work consistent with the residual functional
capacity assessment set forth above.  Dr. Nickels opined that work-preclusive
limitations were present in July 2013, but little weight is given to this opinion, as
it is not supported by findings in his treatment records and is not consistent with
the subsequent objective medical evidence of record.

10

(R. 9, PageID #: 68.)  The ALJ then went on to discuss the opinions of Dr. Flowers, Dr. Gardner, and Dr. Rabold.  *Id.*  The ALJ had earlier summarized the July 2013 medical source statement provided by Dr. Nickels, and recited the limitations set forth therein.  *Id.* at 66.  The ALJ indicated, however:  "There is sporadic treatment and little to support limitations noted in the 2013 medical source statement."  *Id.* at 67.

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.[3]  *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often best equipped to provide a complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. § 416.927(c)(2).  The treating physician doctrine requires opinions from treating physicians to be given controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s).  *Blakley*, 581 F.3d at 406; *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir.

---

[3]  Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017.  82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017).  Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect.  For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision.

11

Jan. 15, 2008).  Treating physicians' opinions are only given deference, though, when supported by objective medical evidence. *Vance*, 2008 WL 162942, at \*3 (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)).

The Commissioner contends that Miller "incorrectly classifies Dr. Nickels as a treating source," noting that he had only examined Miller once prior to writing the July 2013 opinion. (R. 12, PageID #: 1211, citing R. 9, PageID #: 903.)  A treating physician is defined as a physician who has provided medical treatment or evaluation, and who has an "ongoing treatment relationship" with the patient. *Daniels v. Commissioner*, No. 04-5709, 2005 WL 2739084, at \*5 (6th Cir. Oct. 24, 2005) (citing 20 C.F.R. § 404.1502); *Bryant v. Astrue*, No. 2:09-00093, 2010 WL 2901842, at \*2 (M.D. Tenn. July 19, 2010) (citing 20 C.F.R. § 416.902).

The Sixth Circuit has found that the treating physician relationship cannot arise from a single visit:

> The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records. *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983).  Dr. Ruff examined Mr. Barker on only one occasion, and the rationale of the treating physician doctrine simply does not apply here. Dr. Ruff's report was entitled to no special degree of deference. *Atterberry v. Secretary of Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir. 1989).

*Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).[4]  *See also Smith v. Commissioner*, 482 F.3d 873, 876 (6th Cir. 2007) (doctor who authored physical capacity evaluation after examining

---

[4]  Indeed, "depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Kornecky v. Commissioner*, No. 04-2171, 2006 WL 305648, at \*9 (6th Cir. Feb. 9, 2006); *see also Hickman v. Colvin*, No. 1:13CV00089, 2014 WL 2765670, at \*12 (M.D. Tenn. June 18, 2014), *adopted by* 2014 WL 3404967 (M.D. Tenn. July 10, 2014) ("Precedent in this Circuit suggests that a

claimant only once, failed to evince ongoing treatment relationship contemplated by the social security regulations) (citing *Daniels v. Apfel*, No. 00-5009, 2000 WL 1761087, at *2 (10th Cir. 2000)).  The requirement that an ALJ give "good reasons" for rejecting the opinion of a treating physician does not apply to a one-time examining physician.  *Smith*, 482 F.3d at 876; *Kornecky*, 2006 WL 305648, at *9-*10.

Miller asserts, however, that Dr. Nickels was her pain management specialist and provided continuous treatment from summer 2013 to early spring 2015.  (R. 11, PageID #: 1194.)  The relevant inquiry here is not whether Dr. Nickels might have become a treating physician at some future point after he authored the July 31, 2013, medical source statement. The pertinent issue is whether Dr. Nickels had an ongoing relationship with Miller to qualify as a treating physician at the time he authored that opinion.  *See, e.g.*, *Kornecky*, 2006 WL 305648, at *8; *see generally* R. 9, PageID #: 474-475 (medical source statement).  In addition, despite Dr. Nickels' additional treatment of Miller, the medical evidence of record does not contain an updated opinion from Dr. Nickels.[5]  *See generally* R. 9.

---

physician who treats an individual only twice or three times does not constitute a treating source," citing cases).

[5]  Treatment records alone, although relevant supporting evidence, are not equivalent to a medical opinion, as the regulation provides:

> Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. § 416.927(a)(2).  A medical "opinion" under the regulations describes not only the nature and severity of the claimant's impairments, but also what the claimant is capable of doing despite her impairments, and what her physical or mental restrictions are in the workplace.  *See*

13

The treating physician doctrine does not apply to the Dr. Nickel's July 2013 opinion, because Dr. Nickels examined Miller once at the time he wrote that medical source statement. Consequently, the opinion was entitled to no special degree of deference. *See, e.g., Smith*, 482 F.3d at 876; *Kornecky*, 2006 WL 305648, at *8; *Barker*, 40 F.3d at 794. That does not end the matter, however.

The ALJ has the responsibility for reviewing all the evidence in making his or her determinations. 20 C.F.R. § 416.927(e)(2). An ALJ is required to evaluate all medical opinions, regardless of source, unless an opinion is a treating source's opinion entitled to controlling weight. *Smith*, 482 F.3d at 875 (ALJ must evaluate each medical opinion in the record); *Walton v. Commissioner*, 187 F.3d 639, 1999 WL 506979, at *2 (6th Cir. 1999) (TABLE, text in WESTLAW) (per curiam); 20 C.F.R. § 416.927(c). The ALJ must then determine how much weight to give to each opinion. *Id.* In addition, an "administrative law judge may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records." *Dyer v. Social Sec. Admin.*, No. 13-6024, 2014 WL 2609548, at *5 (6th Cir. June 11, 2014) (citing *Gayheart*, 710 F.3d at 376, 379-380). The ALJ will also consider any statements that have been provided by medical sources, whether or not based on formal medical examinations. 20 C.F.R. § 416.945(a)(3).

Unless a treating source's opinion is given controlling weight, the ALJ is required to consider the following factors in deciding the weight to give any medical opinion: the length of

---

20 C.F.R. § 416.927(a)(2); *see, e.g., Dunlap v. Commissioner*, No. 11-5633, 2012 WL 6700319, at *3 (6th Cir. Dec. 27, 2012).

the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source.  20 C.F.R. § 927(c),(e); *see generally Gayheart*, 710 F.3d at 376; *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  While the ALJ is directed to consider such factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in her decision.  *Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

When considering the above factors, the ALJ's decision addressed the supportability of the Dr. Nickels' opinion and its consistency with the record as a whole, although the decision did not indicate the doctor was a pain management specialist.  The ALJ indicated that "little weight" was given to the opinion, "as it is not supported by findings in his treatment records and is not consistent with the subsequent objective medical evidence of record."  (R. 9, PageID #: 68.)  The ALJ's conclusion concerning the supportability and consistency factors followed a discussion of the medical evidence which showed normal grip strength, and normal motor functioning, strength and sensation.  *See* R. 9, PageID #: 67-68.  *See generally Crum v. Commissioner*, No. 15-3244, 2016 WL 4578357, at *7 (6th Cir. Sept. 2, 2016) (suffices that ALJ listed inconsistent treatment records elsewhere in the opinion); *Hernandez v. Commissioner*, No. 15-1875, 2016 WL 1055828, at *4 (6th Cir. Mar. 17, 2016).

The decision renders it apparent that the ALJ considered the proper factors in determining how much weight to give to Dr. Nickels' opinion, although the ALJ's decision does not explicitly address each factor.  *Francis*, 2011 WL 915719, at *3; *Gayheart*, 710 F.3d at 376;

20 C.F.R. § 416.927(c).  The ALJ is required to consider the factors, not necessarily to articulate her consideration of each factor.  *See, e.g.*, *Francis*, 2011 WL 915719, at *3.

Miller argues that the ALJ erroneously favored the opinion of Dr. Gardner, a consulting physician, over that of Dr. Nickels.  (R. 11, PageID #: 1194.)  Miller contends that Dr. Gardner's opinion is questionable because the ALJ's decision found Miller to have more severe medical conditions than Dr. Gardner's assessment.  *Id.* at 1196.  The decision, however, did not grant Dr. Gardner's opinion controlling weight, but merely "some weight," stating:  "Opinions by Drs. Gardner and Rabold suggesting the claimant can perform medium exertional work and simple and repetitive tasks are also given some weight as being largely consistent with the subsequent medical evidence of record."  (R. 9, PageID #: 68; *see generally* PageID #: 152-153 (Dr. Gardner's physical RFC assessment).)  The ALJ concluded that the overall weight of the medical opinions of record was not consistent with the presence of a disabling condition.  *Id.* at 68-69.

The court finds no error in the ALJ's assessing Dr. Gardner's opinion some weight.  Social Security regulations require an ALJ to consider the findings of a state agency medical or psychological consultant.  *McGrew v. Commissioner*, No. 08-4561, 2009 WL 2514081, at *5 (6th Cir. Aug. 19, 2009).  The ALJ must consider their evidence because state agency doctors are considered highly-qualified experts in disability evaluation.  20 C.F.R. §§ 416.913a(b)(1); 416.927(c)(1), (e)(2)(i) and (ii); SSR 96-8p.  In addition, the ALJ is not prohibited from adopting the findings of a non-examining source, although an ALJ generally accords more weight to a treating source over those of a non-examining source.  *See generally Ealy v. Commissioner*, 594 F.3d 504, 514-515 (6th Cir. 2010); *Smith*, 482 F.3d at 875.  Moreover, the ALJ's decision

adopted greater restrictions than opined by Dr. Gardner.  *Compare* R. 9, PageID #: 64 (light

work) *with* PageID #: 153 (medium work).

In sum, the court rejects Miller's argument that the ALJ erred by assigning Dr. Nickels

opinion little weight, because the treating physician rule does not apply.  The opinion was

entitled to no special degree of deference and the court finds no error in how the ALJ weighed

the opinion evidence in the record.  *See, e.g., Smith*, 482 F.3d at 876; *Kornecky*, 2006 WL

305648, at *8; *Barker*, 40 F.3d at 794.

## B.  Step Two Severe Impairments

Miller's second claim is that the ALJ erred when she excluded plaintiff's chronic

headaches and Post-Traumatic Stress Disorder (PTSD)[6] from consideration as severe conditions

under the Sixth Circuit's *de minimis* standard.  (R. 11, PageID #: 1197-1199.)  Miller argues that

the burden of establishing a severe impairment at Step Two is characterized by the Sixth Circuit

as *de minimis*.  *Id.* at 1197, citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998).  Miller

quotes *Higgs*:  "Only slight abnormalities that minimally affect a claimant's ability to work can

be considered non-severe."  *Id.*, quoting *Higgs*, 880 F.2d at 862.

At Step Two, the ALJ determined that Miller has the following severe impairments:

"lumbar displacement, fibromyositis, carpal tunnel syndrome (CTS)/ osteoarthritis of the hands,

and a mood disorder with depression and anxiety."  (R. 9, PageID #: 62.)  The ALJ found these

impairments were established by the medical evidence and are severe within the meaning of the

---

[6]  The court notes that, although Miller listed on her application sixteen (16) physical or
medical conditions that limit her ability to work, she did not include PTSD.  See R. 9, PageID #:
250.

regulations because they cause significant limitation(s) on Miller's ability to perform basic work activities.  *Id.*  As to her other conditions, the ALJ stated:

> The undersigned finds that the claimant's vertigo, hepatitis B, gastroesophageal reflux disease (GERD), headaches, and hypertension impairments have either resolved, are well controlled with medication or do not have more than a minimal effect on her ability to perform work-related activities, thereby establishing that these impairments do not rise to a "severe" level as defined in the Regulations (20 CFR 404.1521/416.921 and SSR 85-28).

(R. 9, PageID #: 62.)

While only slight abnormalities that minimally affect Miller's ability to work are considered non-severe, *Higgs*, 880 F.2d at 862, the question before the court is whether there is substantial evidence in the record supporting the implicit finding that Miller's headaches and PTSD are only "slight" impairments that do not affect her ability to work. *Farris v. Sec'y, HHS*, 773 F.2d 85, 90 (6th Cir. 1985).  Of course, the claimant bears the ultimate burden at Step Two of establishing that the record contains objective medical evidence suggesting that the claimant was disabled, as defined by the Act. *Despins v. Commissioner*, No. 07-1385, 2007 WL 4462369, at *5 (6th Cir. Dec. 14, 2007).  "The mere diagnosis of [an impairment], of course, says nothing about the severity of the condition." *Maloney v. Apfel*, 211 F.3d 1269, 2000 WL 420700, at *2 (6th Cir. 2000) (TABLE, text in WESTLAW) (quoting *Higgs*, 880 F.2d at 863).

The ALJ recognized that Miller testified "she is unable to work because of migraines and anxiety."  (R. 11, PageID #: 1198, citing R. 9, PageID #: 65.)  In July 2013, Dr. Nickels identified chronic migraines as among the medical findings supporting his assessment that Miller could lift no more than five pounds frequently (and ten pounds occasionally), along with severe neck pain, with radiculopathy down both arms, and bilateral carpal tunnel syndrome.  (R. 9,

18

PageID #: 174.)  Miller points out that she reported headaches to her doctors.  *Id.*, citing R. 9,

PageID #: 845 (patient reports "frequent or severe headaches, migraines").

      The treatment notes referenced by Miller indicate treatment for back and neck pain for

the most part.  *See e.g.*, R. 9, PageID #: 846-847, 1026-1027.  On July 2, 2015, however, Emad

Daoud, M.D., indicated that Miller was on Topomax, which was helping her migraines (although

not her diffuse pain).  *Id.* at 1034.  At a November 11, 2015, visit with Robert F. Richardson,

M.D., her medications were adjusted to lessen the frequency of her headaches.  *Id.* at 1085,

1086-1087.  Dr. Richardson assessed "improved migraine without aura," and noted that her

migraines were "not intractable."  *Id.* at 1086-1087.  There is substantial evidence in the record

supporting the ALJ's decision, and to indicate that her migraines were responsive to medication.

Miller has not carried her burden of establishing that the record contains objective medical

evidence suggesting that she was disabled because of her migraines.

      Regarding her mental impairments, which presumably would include PTSD, the ALJ

found that the record "does not demonstrate the continued presence of symptoms of such severity

as to prevent the performance of all work."  (R. 9, PageID #: 68.)  Miller notes that she was

diagnosed with PTSD on October 3, 2014, by Debra Johnson, LSW (licensed social worker).  (R.

11, PageID #: 1198, citing R. 9, PageID #: 932.)   Although Miller cites to treatment records

from Dr. Flowers and Jane Martinez, MSSA, LISW (R. 11, PageID #: 1199, citing R. 9, PageID

#: 704, 1160), neither Dr. Flowers nor Martinez diagnosed her with PTSD.  (R. 9, PageID #:

706-707, 1164.)  The record supports the ALJ's decision, and Miller has not carried her burden

of establishing that the record contains objective medical evidence suggesting that she was

disabled because of PTSD.

19

More importantly, the Commissioner points out that the ALJ's failure to find additional impairments at Step Two, in addition to lumbar displacement, fibromyositis, and the others listed above, does not constitute reversible error.  (R. 12, PageID #: 1219.)  The Sixth Circuit has addressed the issue as follows:

> After an ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Soc. Sec. Rul.* 96–8p, 1996 WL 374184, at *5 (emphasis added). And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987)
>
> Although the ALJ classified several of Nejat's impairments – dysthymic disorder, post-traumatic stress disorder ("PTSD"), and obesity – as non-severe, he concluded that other impairments – arthritis of the right wrist and shoulder and hypertension – qualified as severe. Substantial evidence supports the ALJ's severity determinations.  Moreover, even if the ALJ erred at step two, the ALJ's consideration of the cumulative effect of Nejat's impairments (both severe and non-severe) throughout the remaining steps of the analysis rendered any error harmless. *Id.*

*Nejat v. Commissioner*, No. 09-5193, 2009 WL 4981686, at *2-*3 (6th Cir. Dec. 22, 2009).

Here as well, the ALJ considered the combined effect of Miller's impairments throughout the analysis.  (R. 9, PageID: 68-69.)  The court does not find that the exclusion of Miller's chronic headaches and PTSD as severe conditions at Step Two constitutes reversible error.

VIII.  CONCLUSION

For the foregoing reasons, the court finds that the decision of the Commissioner is

supported by substantial evidence.  The decision of the ALJ should be affirmed.


s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge


Date:  May 18, 2018

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the
specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See
Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir.
1981).